Case number 3-18-0702, Terry Esser v. Jennifer Bonestell v. City of Peoria, Adelaide by Kenneth McGrath, Jr. Please proceed. May it please the Court and the Closing Counsel. My name is Jennifer Bonestell. I'm here for the plaintiff, Terry Esser. To give you some background on the case, which I think will be relevant in my arguments later on, Terry Esser is an officer for the Peoria Police Department or was until he was injured in the line of duty. Terry Esser is the type of officer that you want in the streets. He's rough. He's no-nonsense. He takes nothing from no one. He's not necessarily the type of officer you want as a subordinate, however, and his relationship with the city is fraught at best. I think that is shown in these pleadings and also the pleadings from his pension case, his disability case, his work comp case, etc. Why that matters is this. There are two areas, really, that we are here about that are sort of a first impression for the Court. Whether or not the city has a duty to pay a high-versus-low-deductible plan under PCEVA and also whether or not the city can differentiate between an officer who is killed in the line of duty versus one who is disabled in the line of duty when it comes to the paying of premiums for the officers. Underlying those two issues is one central tenant. Since there are two issues and since the facts are not really on either person's side in terms of this case, given that they both have a fraught relationship and it's shown on both sides, if you don't have the law on your side, argue the facts, if you don't have the facts, argue the law. In this case, I would argue that this is a matter of intent. What did the legislature intend for the PCEVA statute? If you think that the legislature intended that this was a statute that created extra rights on the part of the city as a sort of slap on the back, good old boy, you've done your job, we're going to recognize you, then you may have a different view of this case than if you think that the legislature actually intended that the cities be held responsible for these officers once they were disabled. To get to the first issue, high-versus-low-deductible plans. The city of Peoria offers two, a high-deductible plan and a low-deductible plan. Terry Esser had been paying into for the multiple years leading up to his injury the low-deductible plan. He paid extra for that plan as part of his daily duties. Then he gets injured in the line of duty. And the city, although there's an admittance on the record by Ms. Janet Tomlins, the patient advocate, saying that the high-deductible plan versus low-deductible plan is a supplemental benefit to these officers, the city decides, well, we're only going to pay the high-deductible plan, and you have to incur, officer, the cost of the low-deductible plan. The difficulty with that is, is now you're placing him in a position where he is essentially not making the same income because he's injured in the line of duty, where he is making his disability retirement income, as it's called under the union contract, and asking him to pay for something that he was already accustomed to. As we heard in our first arguments about divorce, what has someone become accustomed to under their relationship? In this case, Terry Esser became accustomed to having this low-deductible plan, which, depending on your income, can make a huge difference. But he also paid for that, correct? He did pay extra for that. He opted to increase what the benefit of the city was under his employment contract. Correct. And the thing is, with regards to the PSEVA statute, the PSEVA statute says essentially when the legislature passes this statute that the idea is to keep the officers stationed as they were at the time of their injury, before their injury. If Mr. Esser, if Officer Esser were trying to gain something, I think the city's argument would be different, and I think it would be more valid. If he is trying to switch himself via his disability from the high-deductible plan to the low-deductible plan, I think that they have an argument. The problem is he is now injured, he is now making substantively less money, because that's what happens when you go on pension disability retirement. It's a different income standard, which, I mean, makes sense under how pensions work. But he still wants the level of care. And the point of PSEVA, really, the legislative intent, is that these guys are risking their lives every day to put themselves out there. They go to work every day not knowing what's going to happen. If they are injured in the line of duty, we should not leave them with less. And that is the problem with the city's argument on this high versus low-deductible plan. They want to leave him with less and say, well, he already paid into it before, so now he can just pay, but where is that extra money coming from? He can't work bonuses, he can't get extra hours, he can't do all the things necessary to make the practical side of that work. Those are not options for him anymore. So can they force him into a higher deductible plan by just saying that this is all we're going to pay for, even though at the outset, I mean, he is getting injured for precisely he's getting injured in making this less money and the purpose of PSEVA is to leave him in the exact same place. Ms. Tomlin's testimony is interesting because she says that it's her understanding that supplemental benefits are not whether or not you have the high-deductible plan or the low-deductible plan for health insurance, but another source of insurance entirely, which the city isn't required to pay. His benefit plan is already existing at the time of his injury. He is in this plan. He's in that low-deductible plan. He's paying that extra out, and he's making the ends meet necessary to do so. But he doesn't have those options once he gets retired or once he gets disabled, essentially. So then where does that extra funding come from, and why does the city suddenly not have to pay, even though he was disabled doing the job that he does for them and PSEVA says he's supposed to be protected? Then there's the second part, whether or not they can discriminate against him in favor of someone else. The city's argument is that Officer Faulkner, who suffered a tragic, tragic death and who's in no way in the same circumstances as Mr. Officer Esser, who is luckily enough to still be with us here today, Officer Faulkner was killed in the line of duty. They pay his benefits. They say it's not a supplemental plan. It's just something that they do that's extra. Here's the difficulty. They say they can do it under home rule authority. The statute says whether or not you are disabled or killed in the line of duty or not one is more important than the other, you are supposed to be protected in either event. In this case, for Officer Faulkner, they make a distinction for him, which I don't think they can do, because the statute says or. Under the law, even if they are factually dissimilar in terms of what happened to them, under the law, under PSEVA, they are factually similar. They are to be treated the same. And the city says, well, we don't have to pay this. This is something we do on our own, out of our own generosity. The problem is, did the legislature intend that the city could do something extra for one and not extra for the other? Officer Esser rubs a lot of people the wrong way. He's rubbed a lot of rats the wrong way. If he had been killed in the line of duty, they don't like him. I might still be here arguing on behalf of his family, and there would be a different distinction that they're making or trying to make under the law. The legislature did not intend that the cities could apply the PSEVA statute as they wished. It did not leave them discretion. It did not say, for those who are meritorious, you can provide these kind of benefits. It said if they are killed or disabled in the line of duty, period, end of story, you are to provide them benefits under PSEVA. But it also says that the health insurance plan doesn't include supplemental benefits that are not part of the basic group health insurance plan. Basic plan is the high deductible plan. Well, see, I don't necessarily think that basic plan is the high deductible plan. The insurance plans are the same. The only difference you're paying is the price. So that's not really, that's the high deductible versus low deductible. The benefit, the deductible, is not, I mean, you're being, you have to pay so much of the dollars of service to a health care provider. Correct. So if you opt to pay more, then your benefit increases and you have to pay less out of your pocket. It is, you're paying for additional insurance or supplemental insurance in that instance where you're saying I don't want to pay $10,000 out of pocket, so I'm willing to pay another $100 a month so that my out-of-pocket is only $500. But that is, you're purchasing additional insurance coverage with that above what is basic in that policy. Is that, do you agree, I mean, am I off base or you're? No. No, I think your Honor is, I think that's a valid point, and I think that's the point the city is making. My point, though, is that's not the basic plan for Terry Esser. That's not his basic plan. His basic plan was the low deductible plan. He's paying for that plan. And I think you have to judge each individual officer and their insurance plan by them, by what they're doing. That's why I think it would be not a basic plan for him if he tried to switch himself out, if he tried to better himself by way of the plan. If he tried to use his disability to get from the high deductible to low deductible, and he's trying to switch the plan, I say that's not so fast. Step back. Go back to square one. In this instance, though, I believe that that is his basic plan. That is the plan he's relying on. That's the plan he's using. And it's the plan that he has at the time he's injured that I think matters, not what the city provides overall. And I think that's why Ms. Tomlin testifies the way she does, because it's not a supplemental benefit to him. It could be in other cases if she's getting a supplement. And to get kind of, I apologize, inarticulate, there is another question in how much discretion we allow. So what is to stop the city, in theory, from negotiating a new contract with the union, because the union can only negotiate on behalf of active members. What is to stop the city from saying, well, we're going to work you all into a $100,000 deductible plan, and you active officers will give you an HSA for $100,000 to cover that deductible. Does that leave these guys out in the cold? Because that's no longer their basic insurance plan. See, that's the point, is I think the circumstances do matter as to what someone has at the time of the accident or injury or death. The city argues that's unworkable, because you can have multiple policies. But the cities typically have one, maybe two policies at any given time, and they're kind of universal throughout the union and the retirees, or in this case, medical retirees. So I think that while there is an argument to be made that, yes, this is a basic plan and deductible is an extra benefit, the difficulty is they're not an extra benefit to these people who are injured in the line of duty. And that's what PSEBA is supposed to protect. PSEBA is supposed to protect these guys from having to worry about, do I put my life on the line, because when I get injured, well, I may not be covered fully. I may have a $5,000 deductible versus a $1,000 deductible. And as anyone who has ever had health insurance deductibles go up, that makes a huge difference in whether it makes or breaks you. You know, you get one illness. You might be able to cover a low-deductible $1,000 plan. If your deductible is $5,000 or $10,000, you may declare bankruptcy. And PSEBA says we are protecting these people. That's the point. They offer sacrifice to us in terms of what they do for their living. We should be protecting them from these kinds of issues. We shouldn't have Terry Esser get injured in the line of duty, rack up hundreds of thousands of dollars in medical bills, because your work comp case, by the way, nobody does open medical anymore, so it's not like they're going to leave the medical open for him to treat forever. And if he has a substantive illness that will come back again and again, they can do a set-aside under, you know, a Medicare set-aside or something to that end or trust. The problem is, though, for anything that leads up to it, anything that's not considered precisely related, anything that's a subsequent sequela consequence of the original injury, wouldn't be covered. Counsel has two minutes. So I think the real question is not the facts or the law in this case, because I will be honest with you, there's not a law on either of our sides. I think it is the intent of the legislature. Did the legislature, when passing this statute, requiring the cities to go above and beyond to protect their officers, did they leave discretion to the city as to how to apply it? And I will argue this. If they thought that the cities would have taken care of these guys in the first place, they wouldn't have needed to pass the C-by-law. I'll leave that off to you. I have a couple of points. Oh, okay. I'm not supposed to ask a lot of questions. Halfway. I can't help myself. My understanding is that the trial court failed to reach one of the issues in the declaratory complaint, and that was whether it's reasonable to differentiate. The court didn't even address that. The court did not address that. That's correct. And if I understand correctly, this lawsuit was dismissed by the judge. Was there a motion to dismiss Penty? Yes. It was a motion to dismiss that we lost. Was it 2615 or 2619? I believe it was 2615. So this is actually a dismissal of the lawsuit? Yes. That you're appealing? Yes. We filed the declaratory judgment action as the plaintiff. We went through the proceedings, depositions. The city filed the motion to dismiss. We lost that motion, and we asked for a finding to appeal it to the appellate court. And that's how we got here. So you're appealing the dismissal? Yes. All right. The officer that unfortunately gave his life for the city, do you know whether he was paying the low premium plan at the time of his death? That I do not know, Your Honor. So if he was paying the low premium plan at the time of his death, he received the plan that he was paying for? Correct. All right. So, all right. I'm just thinking of that. No, that's okay. And thank you. You're welcome. Thank you, Your Honor. Appreciate that. Thank you. May it please the Court. I have at the table with me my associate, Kevin Sheehan, today. He wanted to come up and observe, and he was intimately involved in writing the brief on behalf of the city of Peoria. Can I jump along with you before you start? You sure can. Was this a 2-6-15 motion to dismiss? No, I think what it was, Judge, was they had filed a declaratory judgment action, and based on a ñ when a declaratory judgment action is filed, the appropriate remedy is to dismiss the action based on what we filed as a brief in opposition to that. That's what was ñ that was what was submitted. To answer your question, does ñ Did you dismiss the declaratory action? You just don't deny the relief? I think it's a dismissal of the declaratory judgment. I read your brief, and it's in your brief that you talk about the judge ordering a dismissal. So what I'll do is I'll look at the record. It's your recollection there was no pending motion to dismiss? My recollection is we filed a brief in opposition to the declaratory judgment asking that it be dismissed. That was what the brief asked for. Okay. I appreciate that. Now you can speak. Thank you. Thank you. Before I get into my actual prepared argument, I wanted to address a few things. Both the declaratory judgments and the relief is that it would be denied, then you dismiss it as an exact action. Yes. Yeah, that's what my understanding is. Thank you, Judge. When you read the declaratory ñ the petition for declaratory judgment action, there's nothing in there about this animus between the city of Peoria and Terry Esser. There's nothing in there about the Faulkner and the differing treatment that was given to Officer Faulkner's family, a widow with five children. That's not part of what was in the pleading at any time. And it's really not raised, Your Honor, until I believe in the reply brief in regards to the ñ Mr. Esser's reply brief to our brief. The other thing I'd like to point out before I get into the argument is that Mr. Esser elected to ñ or Officer Esser elected to select the low-deductible plan when he was entitled to a placebo benefit. If there was such an animus here, if you read the record, the city agreed to allow him to go forward and get the placebo benefit without any hearing. There was an agreement on that. So if there's this big animus as to Mr. Esser, I don't think it's reflected in the record. And quite frankly, I don't think it's relevant to what we consider here today in regards to what the city's plan was as a basic insurance plan. I have a question about this. When a police officer is hired, they pay the entire premium per month. That's what I was getting to yesterday. So they don't ñ so the city, as active duty police officers, they do not make a contribution towards their health insurance coverage. There's a premium, and they pay the full ñ and the police officer pays the full cost of the premium under either scenario. It's like, I don't know, 390 if that's one person, and the higher deductible, and 500 and something, one police officer in the lower. They pay all of it. It's not negotiated with each union. There's a health management group that all the unions are represented on, and they do that outside the bargaining agreement. And then what they do is they look in terms of what is being paid in and set those figures, and it can vary from year to year depending on experience based on the losses or the medical claims experience. But the point I was going to try to get to was for that low deductible plan, if you look at the record, if you're an active officer, you're paying $580 a month. If you elect to do that under PSEBA, it's 196. But the question is that if the city, as part of the employment of police officers, they are offering a no-cost insurance premium plan to employees and then saying you're eligible, if you'd like to pay additional, you can pay this, but the cities are going to. For active duty police officers, they pay off their premium no matter what they're doing, right? When you say they pay off, you mean the officer? The officer. Whatever that premium is set, whether they elect a low deductible or high deductible, whatever that premium amount is, in this case, it was a low deductible. If they were an active officer, that officer would be paying the $580, correct? And that's set by that management committee based on loss experience. And that's not every year, is it? Pardon? Isn't that not every year? It is, Your Honor. It is. And it's taken off the table, and I think there's reasons for that I don't need to get into. The other thing I wanted to address, and this isn't even, I wasn't intending to address this today, but, you know, Officer Esser got a line-of-duty disability pension. And you can take judicial notice of this, but that's a 65% non-taxable benefit that he gets per year. And then there's 3% increases when they reach age 60, and there's no set-off if they receive supplemental work elsewhere. So there is, there are these other benefits out there that Mr. Esser was entitled to that aren't part of the record. I want to only mention it because of the discussion that was done here today in regards to the appellant's argument. I'd rather focus on the law and what the law says in regards to this. And this is all about Section 10. It is about Section 10, and it's about the language of 10A, and the health insurance plan does not include supplemental benefits that are not part of the basic group health insurance plan. And in interpreting the PACEBA statute, we know that it's an unfunded mandate that was passed by the legislature in regards to municipalities to fund those things. But we have to look at how some, the case law in regards to how the PACEBA statutes to be interpreted when you have a home rule authority such as the city of Peoria. And what we have here is, if you look at the NOAC decision, which we've cited in our brief, it states that when a statute creates new liabilities or a derogation of the common law, they are to be strictly construed in favor of the party subject to their operation. Well, the party subject to their operation here is the city of Peoria. That's NOAC. There's also been, so we would submit it has to be construed in favor of the city of Peoria. We've also had a case law that's come down that's challenged. If you look at the case of Patterson v. Village of Hoffman Estates, where cities tried to put in administrative procedures for how to do a PACEBA claim. And people came in and suggested, wait a minute. The claimants came in and said you can't do that. You're precluded to do that. And what underlines all of this? What underlines all of this is the fact that home rule authorities have concurrent jurisdiction. They were not precluded by the PACEBA statute from exercising concurrent jurisdiction in these types of matters. Now, is Mr. Esser being treated any differently than anybody else that was listed on that sheet? Other than let's take Mr. Officer Faulkner. But how can we take Mr. Faulkner? And I understand, you know, his status as a police officer, either disabled or killed in the line of duty. He's in the same category with this officer. So the determination of what is to be paid for those benefits has to, you have to undergo the same analysis from the city standpoint. My response to that, Your Honor, would be that when we look at the declaratory judgment action that was filed on behalf of Officer Esser, there is no reference made as to this disparate treatment with Officer Faulkner in line. This is an afterthought that came in after the declaratory judgment action was filed. There's no reference in there. And when we look at the other individuals that are on that list, everyone has an election to make. It gets back to your point. Can we, if I want to go with the high deductible because maybe I'm healthy, you know, and I want to pay a lower premium, that's an individual decision or a family decision that you're making. If you're looking at I might have a lot more claims or I've had a history of illness, then I'm going to go with the low deductible. Mr. Esser had that same election. And if you look at his deposition, he was given that choice. But wouldn't your argument carry more weight if, in fact, the city was paying some of that premium? If they said, hey, we're covering this, but if you want to have a lower deductible, then you're on your own for that. Well, there's a funding. Let me say this. They have this management committee meeting. I don't think it's fully flushed out in the record, to be honest, in regards to how all of that's funded. I just know that they're setting the basic premiums for these officers and what the city's contributions is, if they don't cover, or what the stop-loss policy is. There may be a stop-loss policy involved with this insurance carrier. That's an obligation of the city. You agreed to page 4, it says for active police officers, their health insurance premiums are deducted out of their paycheck. The full cost for the high-deductible plan, an active-duty police officer would be required to pay the full cost, regardless of which plan the officer chooses. And I don't know what I'm – I guess what I'm trying to say is, are we talking about strictly the premium? Or, you know, let's say you have an excessive amount of claims lost for a particular year. They are expected to pay the full premium for what's set by that health management committee. So I wish I had a better answer for you in regards to all the underpinnings as to how the insurance works in regards to where does the claim stop, stop-loss or whatnot. But really what we're talking about here is the election by Officer Esser as to the plan he wanted to pursue. And when we get to the law in regards to how we should interpret this placebo statute, the law seems to be replete. And there's no case directly on point, but there are cases that clearly indicate the cities can, under their home rule authority, exercise this type of judgment in regards to saying, here is our basic health insurance plan, which goes back to your original question, I think, of the appellant. And I think that's what drives this. I also think if you look at the instance of Officer Esser was given the option of saying, I will take the high deductible plan, the low deductible plan. No one forced him into that. If you read his deposition, no one misled him on that. And what ended up happening when he went and stayed with the low deductible plan, his premium dropped. It dropped from $500 some dollars to $196. So we're talking about $200 a month that he's paying versus what he was paying before. They bring up the issue of, well, these plans can change. Sure they can change. You have to be adaptable of your municipality to change your health insurance to accommodate your needs. But that's why you have the management committee. That's what the management committee is for, to say that, oh, we're going to go to $100,000. You know, to give hypotheticals like that I don't think is relevant to discussion here as to whether the PSEBA plan language or the PSEBA language regarding the basic health insurance plan is the one that was offered here by the city of Peoria. I would submit that, in conclusion, the city of Peoria's PSEBA policy does not exceed its statutory obligation. It offers employees and PSEBA recipients a choice of two policies, the high deductible and the low deductible. The PSEBA statute does not require employers to provide a choice of health insurance plan. The city of Peoria here offers two plans as an optional benefit. They're required to pay the basic plan. Yes, yes, Your Honor. High deductible. Yes. If he elected high deductible, he has no other option from a premium standpoint. We believe it's well within the city of Peoria's home rule authority, based on the case law, and decided in our brief. And we would submit that Judge Gorman Do you have, finish your thought, I have a question for you. Sure. Judge Gorman, in her decision, finding that dismissing the declaratory judgment action was, should be affirmed. Thank you. The question I had is about the benefits manager for the city. I'm not finding her name right now. Janet Conlin's, I believe. When she said that she didn't consider these two types of policies, the high or the low deductible to be a supplemental, she considered supplemental to be additional outside insurance, either from his house, or if you add something like, that isn't covered anywhere, glasses, orthodontia, or anything. Is that considered supplemental? Or is there anything in his record about their employee handbook or anything that describes, I think You mean attendant benefits other than the health insurance? Right. I don't know if there's anything in the record on that. I would say that Janet Conlin's, I believe, testified that this change regarding this high deductible, low deductible, was done in 2014 and was mandated by the city manager, Patrick Heurich, for the city of Peoria. And that's when that occurred. And I think that was consistent with the case law. As you know, there's the other case out there regarding when you go on Medicare, that you don't necessarily have to continue placebo. We cited that in the brief, too. So I think that was a mandate from above. Janet Conlin's paid very properly. Thank you. The Officer Faulkner's situation, the city's a home renewal unit, and they're required by law to provide the basic insurance plan that you allege was provided in this case. They're not required by law to provide supplemental or these other additional things that you have the ability to acquire at a cost. And with regard to Officer Faulkner, what's your position about the ability of the city, on occasion, to do something like they did with a person who was killed in the line of duty with all these children? This is in a record. Officer Faulkner was shot by a suspect he was chasing. I think he was shot by his own gun, if I remember correctly. Well, who has standing to challenge the benefits he's getting? I don't necessarily think that is an issue before us. But to answer your question, what was decided was the city of Peoria is paying a low-deductible plan for his wife and five children. I think he had five children. So they elected to do that. It was that death was some time ago. I can't remember exactly when. But I think in assessing this, we have to look at what the pleadings indicate and what the CEBA statute mandates. Thank you. Appreciate your time. Thank you. Thank you again, Your Honors. To go first back to the beginning of Mr. Snodgrass's argument, I apologize, Justice Wright. No, no, no. I didn't know the answer. So that's why I asked the question. Well, I should have known the answer. I did not either. And so for that, I'm sorry. I don't do very many declaratory judgment actions. So that was my mistake. To go to then fast forward to Mr. Snodgrass's last comment. Officer Faulkner was a valid member of the community. His family is very well respected there. And he was killed in tragic circumstances. And the city, I'm not here to argue the city shouldn't begin bending over backwards for him. They should be. You know, they should be doing everything for their family. And I support their decision to do so. The difficulty is the loss is they should be doing the same for Terry Esser because he was injured in the line of duty. Not that they should take away from Officer Faulkner. But they underperceive Officer Esser, who gave his body to the line of duty, should also be rewarded. What section of the statute are you referring to? I'm referring to the plain language, which just simply says killed or disabled in line of duty, Section 10A. The fact that you had a lot of these arguments in the brief, some of them addressed here with Mr. Snodgrass today, about whether something is unworkable, whether or not something is feasible, whether or not something is fair. As he stood here today, Mr. Snodgrass couldn't even tell you how the city pays Officer Faulkner's family's premiums. Because they're going to pay them regardless. It's not about the burden to them. It's about doing the right thing. And I can appreciate that the city is trying to do the right thing. I just think the placebo statute also mandates that they do the right thing for everyone. That's the whole point placebo was enacted, was because the legislature did not entrust that these officers would be taken care of the way they're supposed to. Because there's a lot of fractious relationships in small towns. And you can't always rely on one half to do for the other half when they have, you know, been fighting for the last 30 years of their careers. I did not make the difference, the disparate argument between Officer Faulkner and Officer Esser at the time of filing this declaratory judgment action. That is true. But that didn't mean I didn't preserve it. I made it in rebuttal to the Home Rule Authority argument, which I had not anticipated coming up. And when I saw the Home Rule Authority argument, in other words, that they can say they can do this, that was my response. But it was preserved for this court. The city has a duty to take care of all of its members under placebo when they're killed or injured in the line of duty. Catastrophically injured, by the way. Not just injured. Paper cutting, got to cut it. When you are disabled as a result of your job, the city is supposed to take care of you under placebo. And the legislature clearly enacted that for precisely this purpose. Because you cannot always trust that everyone is going to be treated fairly. You cannot always trust that everyone who's given themselves in sacrifice to the city or the state or the government is going to be taken care of fairly. And the legislature of Illinois said, we want to make sure that if we ask our officers to go out and put themselves on the line, that at the end of the day we will have their back. And while it may just be the difference between a high and low deductible premium to you or I, it is not that, to Terry Esser. It is a show that he has actually given himself and that the city is respecting the status he was before and is continuing on that status as they're required to do under the law. Thank you. Thank you all for your arguments. The court will take this matter under advisement, render a decision in the near future. In the meantime, we'll take a short recess for panel change.